## TEAM v. BRYANT.

INSANITY.—JUDGMENT in foreclosure of a mortgage executed by a man subject to attacks of *dementia* with lucid intervals, will not be set aside on motion of his heirs because he was not represented by committee, unless the evidence shows that at the time of the execution of the mortgage and when summons and complaint in foreclosure were served he was suffering from such attack, or that from the time of such service he was in a state of continued mental aberration for such period of time as to prevent his appearance and answer.

Before GARY, J., Fairfield, September, 1903.   Affirmed.

Motion to set aside judgment by certain heirs of defend-
ant, Bryant, in Tinnie R. Team against Dick Bryant *et al.*
The Circuit decree on the motion is as follows:

"The plaintiff above named obtained judgment by default
for foreclosure against the defendant, Dick Bryant, in June,
1902.   The mortgaged premises were sold under said judg-
ment in December, 1902, and were purchased by the plain-
tiff herein.   Subsequently Dick Bryant died.   A motion is
now made on behalf of the heirs of Dick Bryant to have the
said judgment vacated and set aside on the ground that Dick
Bryant was of unsound mind at the time of the service of the
summons and complaint upon him, and no committee or
guardian *ad litem* had been appointed for him.   It is not
claimed that he was ever judicially declared to be of unsound
mind, but, on the contrary, it is conceded that no such adju-
dication was ever had and that consequently no guardian or
committee was ever appointed for him.   It appears by the
proof of service endorsed on the record that the summons
and complaint in the aforesaid action were duly and regu-
larly served personally on Dick Bryant, and that fact is not
denied.   But it is urged that the defendant's insanity was so
complete as to amount to at least as great disability as in-
fancy would be, and that the judgment is therefore, voidable
and should be set aside.

"There can be no doubt that this Court has the power to
avoid a judgment by default recovered against a defendant
who is so insane at the time when action is brought against
him as to be incapable of defending his rights, even though
there has been no inquisition of lunacy or other judicial
ascertainment of his insanity.   But in such a case the fact of
insanity must be established by a clear preponderance of the
evidence.   *Ex parte Kibler,* 53 S. C., 461.   In this case, it
is not clearly established that Dick Bryant was so bereft of
reason and sanity at the time when the summons and com-
plaint were served upon him that he could not understand

that he was being sued and must defend his rights.   The evidence is submitted in the form of affidavits—'a most un-satisfactory mode of eliciting truth'—and is very conflicting. I gather from it that Dick Bryant was an old colored man, over ninety years old at the time of his death; that his wife predeceased him by about a year and a half; that for five years before his death he was partially, or some say totally, blind; that he was subject to fits apparently epileptic; that his temper was violent and he was at times considered dangerous to the members of his own family, though he does not seem ever to have attempted or desired to do violence to others; that he would at times do silly and even unclean things, such as partially stripping off his clothes in public places or soiling his own house; and that he sometimes had delusions, as, for instance, seeing fire falling from heaven, or a river or a drove of cows coming towards him, but such delusions were only temporary and beyond exciting his astonishment or terror at the time, they do not appear to have governed his conduct.   It is said that he suffered a severe injury to his head many years ago, prior to the civil war, while he was a slave, and to this is attributed the subsequent alleged weakening of his mind.   Yet after his emancipation he managed well, acquired considerable property including the land now in question, reared a large family of children, and succeeded far better than the average person of his class.   Many of his neighbors testify that they never heard of his being crazy until after his death, and amongst them is his own daughter, Louisa, who testifies that she knew him a few times to have fits, but as soon as the fit was over he had as good sense as any body.   This is corroborated by the opposing witness, Lee Derby, in reply, who says that he was strictly honest and a good neighbor except when his 'spells' were on him, and then he had no reason in him, adding that they (the spells) came often.   And the testimony of other witnesses is to similar effect.   Many of the witnesses say he was incapable of attending to business, yet we find him even in his blindness and old age, attending to

various matters of business, making palings or boards, doing farm labor, making molasses, borrowing, hiring, paying for his small needs, etc. One important business transaction had by him but a year before this suit was brought was the making the note and mortgage in favor of the defendants, C. P. Wray & Co. Both the note and the mortgage were witnessed by Mack Murphy, his son-in-law, who now swears that he was insane and had been so for many years, and is the most zealous agent in this motion to annul the judgment herein. It is remarkable that with all the evidences of his insanity now alleged, no effort was ever made during his lifetime to have a judicial inquiry into the state of his mind, and only after he is dead and beyond the jurisdiction of human tribunals is this Court asked to sit in judgment upon his sanity, not for his benefit or protection, but for the sole purpose of upsetting the solemn determination of the Court made in reference to his transactions which had gone unchallenged by him or any others for more than ten years. Doubtless Dick Bryant was old, blind, infirm, suffering the weakness of both body and mind which extreme age is apt to entail; he was subject to fits or 'spells' of an epileptic or some other character which for the time being clouded or eclipsed the light of reason, and his pitiable condition toward the close of his life bordered on, perhaps at times amounted to, imbecility. But imbecility is not necessarily insanity. It may exist in different degrees between the limits of absolute idiocy on the one hand and perfect capacity on the other. 16 Enc. (2d ed.), 563. If the defendant's mental condition was ever that of total incapacity, it was relieved by periods when he was in possession of his faculties, with understanding of the ordinary affairs of life sufficient to render him liable to suit by personal service. Such, I conclude from the evidence, was his state when the summons and complaint in this action were served upon him. J. D. Nelson, who served the summons and complaint on him in August, 1901, swears that Dick understood what was being done, and this is corroborated by the testimony of Henry Tucker, Dick's son-in-

law, who swears that about that time Dick talked to him about the matter, giving an intelligent account of the origin of the mortgage debt and the reason it was never paid.

"It is ordered and adjudged, that the motion be dismissed with costs."

From Circuit decree, movants appeal.

*Messrs. Buchanan & Hannahan* and *T. M. Cathcart,* for appellant.

*Mr. Geo. W. Ragsdale,* contra.

April 7, 1905. The opinion of the Court was delivered by

Mr. Justice Woods. The Circuit Court refused a motion made by the heirs of Dick Bryant, one of the defendants, now deceased, to set aside a judgment for foreclosure and sale. The motion was made on the ground that Dick Bryant was insane when the mortgage was given, and the summons and complaint were served, and no guardian *ad litem* was appointed on his behalf. The case is very perplexing. The affidavits are convincing that Dick Bryant was at times irresponsible to the degree of complete insanity; governed in his conduct by delusions and violent passion rather than by reason, and sometimes indulging in revolting indecencies and exposures of his person without consciousness of impropriety. The affidavits, however, also show there were lucid intervals. But there is no satisfactory evidence of the duration of either the attacks of *dementia* or of the lucid intervals. In the Circuit decree it is made very clear, however, that during these intervals he transacted business with intelligence, and that he was capable at such times of making valid contracts.

"By 'lucid intervals' is meant, not merely a cessation of the violent symptoms of the disorder, but a temporary restoration of reason such as to create responsibility for acts

done during its continuance. Still, restoration of the mental faculties to their original condition is not necessary; it is sufficient if there be such restoration that the person is able, beyond doubt, to comprehend and to do the act with such reason, memory and judgment as to make it a legal act." 16 A. & E. Ency. Law, 2 ed., 565. The rule as to mental capacity is more stringent in contracts than in wills, but the following language, taken from *Lee* v. *Lee,* 4 McCord, 181, 183, 17 Am. Dec., 722, is applicable to contracts: "But it was not (as was said by Lord Erskine in his celebrated speech for Hadfield) every man of a frantic appearance and behavior who is to be considered a lunatic, either as it regards obligations or crimes, but he must appear to the jury *non compos mentis,* not at the *anterior period,* but *at the moment* the act was done. Coop. Med. Jurisp., 396. In the case of *Cartwright* v. *Cartwright,* 1 Phil., 100, this doctrine was carried still further. 'If (it was there stated by the court) you can establish that a party habitually afflicted by the malady of the mind has intermissions, and if there was an intermission at the time of the act, that being proved is sufficient, and the general habitual insanity will not affect it.' "

The attacks described in the affidavits were so violent that it is extremely improbable Dick Bryant could have been induced to even make an effort to execute a mortgage while one was on him. It is to be further observed that while there are general statements in the affidavits of insanity at the time the mortgage was made, there is no specific charge that it was not executed during a lucid interval. The mortgage was witnessed by a son-in-law, who is now very active in pressing the allegation of insanity, and it is highly probable from this circumstance, which is unexplained, that the mortgage was given when the mortgagor was in possession of his faculties.

It is also reasonable to suppose that Dick Bryant was sane when the summons was served upon him, and did not intend to resist the foreclosure, for it seems that some at least of his

heirs who are now trying to set the foreclosure aside knew when the service was made, and it may be fairly inferred if the old man had been unable to look after the suit, they would have taken some steps in his behalf.    This non-action on the part of his children tends to support the sworn statement of J. D. Nelson, who made the service, that he appeared to be quite in his senses when the summons and complaint were given him, and of Henry Tucker, Bryant's son-in-law, whose affidavit is to the effect that Bryant told him after the service about the origin of the mortgage and its non-payment.    There is no sufficient evidence that after the service of the summons he was in a state of continued mental aberration for such period of time as to prevent his appearance and answer as required by the summons.    The additional direct testimony on these points is set forth in the Circuit decree and need not be repeated here.

On review of all the affidavits, we conclude that the judgment of the Circuit Court is supported by the preponderance of the evidence, and it is, therefore, affirmed.