## 10853

### CATHCART v. HOPKINS

### (112 S. E. 64)

1.  INSANE PERSONS—PURCHASERS AT SALE UNDER JUDGMENT SHOWING JURISDICTION OF SUBJECT-MATTER AND PARTIES ACQUIRED VALID TITLES IN ABSENCE OF SUBSTANTIAL IRREGULARITIES.—Where a judgment directing sale of a lunatic's property showed on its face that the Court had jurisdiction of the subject-matter and the parties, and no substantial irregularity appeared in the proceedings or the sale thereunder, bona fide purchasers for value at such sale, relying on the validity of the judgment, acquired valid titles.

2.  INSANE PERSONS—LUNATIC NEED NOT BE SERVED WITH NOTICE OF INQUISITION.—In view of Const. 1868, Art. 4, § 20, vesting the Probate Court with jurisdiction of lunacy cases jurisdiction of which was theretofore vested in Courts of Equity, in which it was not necessary to give notice of an inquisition in lunacy to the party affected, and by Act Dec. 17, 1808 (5 St. at Large, p. 571), in the Court of Common Pleas, with whose jurisdiction in such matters that of the Probate Court is concurrent, the validity of a decree of a Probate Court directing the sale of a lunatic's property was not affected by the fact that the lunatic was not served with notice of the inquisition.

3.  INSANE PERSONS—RECORD HELD NOT TO SHOW THAT LUNATIC WAS NOT SERVED WITH NOTICE OF COMMITTEE'S PETITION FOR APPOINTMENT.—That the record on a motion to set aside a judgment directing the sale of a lunatic's property on petition of his committee showed that a copy of the order for examination into the latter's fitness was served on the lunatic's wife, from which it might be inferred that he himself was not served, did not show that he was not served with notice of the committee's petition for appointment, as to which · the record was silent.

4.  ESTOPPEL—HEIRS OF DECEASED LUNATIC HELD PRECLUDED FROM ATTACKING VALIDITY OF APPOINTMENT OF COMMITTEE BY ADMISSIONS IN PETITION FOR RESTORATION TO SANITY.—Where one adjudged insane petitioned that the inquisition and all proceedings therein, including the appointment of a committee, in whose custody he alleged his property was, be superseded on the ground that he was of sound mind and that the committee be required to account for his acts, an adjudication that he was sane was conclusive against

NOTE: On necessity and sufficiency of notice of lunacy proceeding to the alleged lunatic, see notes in 23 L. R. A. 737, and 26 L. R. A. (N. S.) 232.

him and his heirs, who could not thereafter question the validity of the proceedings, under which his property was sold, on the ground he was not served with notice of the committee's petition for appointment the validity of which he admitted.

5. INSANE PERSONS—UPHOLDING VALIDITY OF SALE OF LUNATIC'S PROPERTY HELD NOT RES JUDICATA, BUT ARGUMENTATIVELY CONCLUSIVE, IN ACTION TO SET ASIDE JUDGMENT DIRECTING SALE.—A judgment, in an action by a former lunatic, after being adjudged sane, to recover land sold under a judgment for his committee in a suit against creditors, that it was not necessary that he should have been named as a plaintiff, and that the committee's appointment did not transfer the legal title to him, his status being analogous to that of a guardian, *held* not res judicata of the validity of such proceedings, but argumentatively conclusive, in an action by the lunatic's heirs to set aside the judgment.

6. INSANE PERSONS—RELIEF AGAINST SALE OF LUNATIC'S PROPERTY HELD BARRED BY LACHES.—A former lunatic's failure, when adjudged sane, to promptly take steps to set aside a judgment, under which his property was sold, when given actual or constructive notice thereof, was such laches as barred his heirs at law, as well as himself, from relief.

7. JUDGMENT—IN REGULAR FORM BY COMPETENT COURT HAVING JURISDICTION, IS CONCLUSIVE.—A judgment regular in form by a competent Court having jurisdiction is conclusive.

8. LIMITATIONS OF ACTIONS—ON RESTORATION TO SANITY, STATUTE BEGAN TO RUN IN FAVOR OF PURCHASER OF LUNATIC'S PROPERTY, AND WAS NOT SUSPENDED BY SUBSEQUENT LUNACY.—When a lunatic, whose property was sold, was subsequently adjudged sane, his cause of action to set aside the judgment directing the sale arose, and the statute began to run in favor of the purchasers, and was not suspended by his subsequent lunacy.

9. APPEAL AND ERROR—VOID JUDGMENT DIRECTING SALE OF LUNATIC'S PROPERTY NOT SET ASIDE, EVEN IF NO TIME RUNS AGAINST MOTION, WHERE GRANTEES HELD FOR NEARLY 40 YEARS.—A judgment directing the sale of a lunatic's property will not be reversed and the case remanded, even if the judgment were void, and no time runs against a motion to set it aside, where grantees had held for nearly 40 years.

Before SEASE, J., Fairfield, September, 1919.    Affirmed.

Motion by T. M. Cathcart and others to set aside a judgment for Samuel Cathcart, committee of John H. Cathcart,

lunatic, since deceased, against Lucius Hopkins and others, and to set aside all sales and proceedings thereunder. From a decree refusing the motion movants appeal.     Affirmed.

The circuit decree referred to in the opinion is as follows:

This is a motion by Thomas M. Cathcart, Mary A. Cathcart, and William M. Cathcart, as heirs at law of John H. Cathcart, deceased, to set aside the judgment or decree of the Court made in the above-entitled cause, and all sales and other proceedings had thereunder. Copies of the notice of this motion, with affidavits, and grounds of the motion, were served upon John W. Lyles, the present Clerk of Court of Common Pleas for Fairfield County, and sundry other parties, who were purchasers of the real estate of John H. Cathcart, deceased, sold under the decree rendered in the above-entitled cause, or intermediate or remote grantees of purchasers at said sale.

The motion was heard by me at the September, 1919, terms of the Court for Fairfield County upon the notice and grounds served, together with the record of the judgment in said cause, and affidavits and testimony taken under the order of reference previously made in this proceeding.

The movants are the heirs at law of John H. Cathcart, deceased, who departed this life on or about the 1st day of January, 1908, and the respondent's in the motion are John W. Lyles, Clerk of the Court, together with the purchasers or their intermediates or remote grantees of the real estate formerly belonging to John H. Cathcart, deceased, and sold under the decree of the Court in the above cause, as hereinabove stated.

The movants assailed the validity of said decree upon 72 grounds set forth in the notice of motion, but many of the grounds consist of repetitions of other grounds in different phraseology. The general grounds upon which the movants seek to have the decree and judgment of the Court

set aside, as well as the sales and other proceedings had thereunder, are: First, that the Court of Common Pleas did not have jurisdiction of the person of the said John H. Cathcart at the time of the rendition of said decree. Second, that the plaintiff Samuel Cathcart was not the duly appointed committee of the said John H. Cathcart, and had not authority to bring said action. Third, that the appointment of the said Samuel Cathcart as committee was null and void, and was in violation of the provisions of the Constitution of the United States, and of the State of South Carolina. For a proper understanding of the questions raised on this motion, it will be necessary to make a brief statement of the facts appearing from the records and evidence offered before me.

It appears that on or about the 23rd day of June, 1874, Samuel Cathcart and Thomas B. Madden, the brother and brother-in-law, respectively, of John H. Cathcart, filed their petition in the Court of Probate for Fairfield County, alleging that the said John H. Cathcart had been so deprived of his reason and understanding that he was not fit and unable to govern himself or to manage his affairs, and praying that a commission de lunatico inquirendo might be issued out of said Court to fit and competent persons, authorizing them and requiring them to inquire into the lunacy of the said John H. Cathcart. This petition was accompanied by affidavits of H. L. Elliott and R. J. McCauley, from which affidavits it appeared that the said John H. Cathcart was at that time incapable of governing himself or properly attending to his own affairs in consequence of his insanity.

On hearing said petition, the Probate Court for Fairfield County ordered that a commission in the nature of a writ de lunatico inquirendo be issued in the usual form, directed to J. M. Elliott, James Beaty, H. A. Gailliard, George H. McMaster, and Isaac N. Withers, directing

13 S. C.—119

them to inquire into the lunacy of the said John H. Cathcart. This commission directed the sheriff of Fairfield County to summon a jury of 24 men to attend at the Court-house in Winnsboro, S. C., on the 30th day of June, 1874, then and there upon their oaths to inquire into the lunacy of the said John H. Cathcart, and all of such matters and things as should then be given to them in charge. At the time appointed, testimony was taken before the jury, in-cluding medical testimony, and on the same day the jury returned its verdict whereby it found "that the said John H. Cathcart at the time of making this inquisition is a lunatic and of unsound mind and does not enjoy lucid intervals so that he is capable of the government of himself or the management of his messuages, lands, tenements, goods, and chattels, and that he has been in. the same state of lunacy for the space of about two years last past and upwards, but how the said John H. Cathcart became lunatic the jurors aforesaid know not unless by the visita-tion of God."

The jury also found that the said John H. Cathcart was seized and possessed of 17 or more tracts or parcels of land, together with certain personal property therein men-tioned and described.

On the 27th day of August, 1874, the Judge of Probate upon said inquisition made an order that the return of the commission be accepted and confirmed, and that a com-mittee of the person and estate, both real and personal, of the said John H. Cathcart, be appointed. On or about the same date, Samuel Cathcart filed his petition in the Probate Court for Fairfield County, praying that he might be appointed the committee of the person and estate of the said John H. Cathcart, upon his entering into bond, with approved sureties in such sum as might be deemed meet and proper. The record is entirely silent as to whether a copy of this petition was ever served upon the said John H. Cathcart.

On the 28th day of August, 1874, on hearing said petition, the Probate Court made an order fixing the 2nd day of September, 1874, as the time for an examination to be made as to whether the petitioner, Samuel Cathcart, was a proper and suitable person to be appointed the committee of the person of the said lunatic, and also the value of the personal estate, and the value of the real estate of said lunatic, and it was ordered that a copy of said order be served upon Mrs. Nancy Cathcart, the wife of the said John H. Cathcart, in order that she might show cause why the prayer of the petitioner should not be granted, and to take such part in said examination as she might be advised or think proper.

After taking full testimony as to the fitness of said Samuel Cathcart to be appointed committee of the person and estate of John H. Cathcart, an order was made, dated the 2nd day of September, 1874, appointing the said Samuel Cathcart as such committee upon his entering into a bond with two or more approved sureties in the penal sum of $21,000, conditioned for the honest and faithful performance of his trust.

The bond required by said order was subsequently given and filed by the said Samuel Cathcart.

On the 3rd day of October, 1874, the said Samuel Cathcart, committee of the estate of John H. Cathcart, lunatic, commenced his action in the Court of Common Pleas for Fairfield County against Lucius Hopkins, Amos T. Dwight, and Edwin L. Trowbridge, copartners under the firm name of Hopkins, Dwight & Trowbridge, and Samuel B. Clowney, Clerk of Court of Common Pleas for Fairfield County.

Service of said summons and complaint, as appears from the record, was duly accepted by both the parties defendant.

Among other things, it is alleged in the complaint that the plaintiff Samuel Cathcart had recently been appointed committee of the person and estate of John H. Cathcart, who had been judicially declared a lunatic in the Probate Court for Fairfield County. It is further alleged in the complaint that the estate of the said lunatic consisted of certain personal property therein described, and also 18 tracts or parcels of land.

It was further alleged that the indebtedness of said lunatic was very large, amounting to the best information of the plaintiff to at least the sum of $50,000, and the creditors of said lunatic, whose claims were due, were pressing for judgment, and that many of them were threatening separate suits for the collection of their respective claims by levy and sale.

It was further alleged that the defendants were mortgage creditors of the said lunatic. The plaintiff therefore demanded judgment that a homestead be set off to said lunatic and his family, and that the creditors of said lunatic be enjoined from sueing on their respective claims, and that they be required to come in and establish them before a referee to be appointed by the Court in that proceeding, and that the proceeds of the sale of the estate of said lunatic, after the payment of the costs and expenses, be applied to the satisfaction of liens and other claims according to the respective rights of the parties. This action has practically one to marshal the assets of the estate of said lunatic, so that the proceeds of the sale could be equitably paid and administered.

An order or reference was thereafter made by Judge Mackey, whereby it was referred to Henry A. Gailliard, Esq., to ascertain and report as to the truth of the matters alleged in the complaint, and more especially to inquire and report as to the propriety of the sale of all the real and personal estate of said lunatic as prayed for in said

complaint.   Said referee took testimony and made his re-
port to the Court, from which it appeared that he had ex-
amined the pleadings in the case and taken testimony upon
the matters therein contained, and that he found them to
be true, and recommended a sale of the property.   He fur-
ther found and reported that the indebtedness established
at the time of said report amounted to about $56,000, a
schedule thereof being attached to the testimony in the
case.   It appeared from the record that other claims were
subsequently established bringing the total amount of the
indebtedness to $70,000 or more.

On the 18th day of November, 1874, on hearing the
pleadings and proceedings, together with the report of
Henry A. Gailliard, the referee above named, an order was
made by the Court of Common Pleas for the sale of the
real and personal estate of said lunatic, after setting of a
homestead of him and his family, directing the sheriff of
Fairfield County to make said sale on the first Monday in
January next thereafter, after due advertisement, and di-
recting the said sheriff to make a report of said sales.

It was further ordered that all creditors of said lunatic
be enjoined from prosecuting their separate suits against
said lunatic or his committee for the collection of their
respective claims, and that they be required by an advertise-
ment in the Winnsboro News to come in and establish
said claims before Henry A. Gailliard, Esq., who was ap-
pointed by said order as referee for that purpose.

The sheriff thereafter made his report on sales, from
which it appeared that the 18 parcels of real estate were
sold on the first Monday in January, 1875, as required by
said decretal order.

On the 5th day of May, 1875, the said report on sales
was confirmed by the Court of Common Pleas for Fair-
field County.

The various purchasers, with one or two exceptions, complied with the terms of sale, and deeds were made to them by the sheriff, and they entered into possession of the lands respectively purchased by them. In the case of one or two purchasers, who failed to comply, resales were ordered, the land sold, and deeds made to the purchasers thereunder, who entered into possession thereof.

The purchasers at such sale, and their grantees, have remained in undisturbed possession of the lands so purchased at said sale, except as hereinafter mentioned, and are still in possession of such lands.

On or about the 20th day of April, 1876, the said John H. Cathcart, in person, and by his attorneys, Messrs. Porter & Brawley, filed his petition in the Court of Probate for Fairfield County, wherein he alleged that he had been informed of the proceedings in the Court of Probate in the year 1874, in which he had been adjudged a lunatic and incompetent to manage his own affairs, and that all of his property, real and personal, had been placed in the care and custody of Samuel Cathcart, of said County and State, who had been appointed committee of his estate under an order of the Probate Court, bearing date September 2, 1874. He further alleged that he had been committed to the State lunatic asylum on the 2nd day of July, 1874, and that he had been discharged from said asylum on the ———— day of May, 1875.

He further alleged that for several months past he had carried on business at Winnsboro, S. C., that he was then of sound mind and understanding, entirely competent to manage his own affairs, but that the said Samuel Cathcart still continued as committee and retained possession of books, papers, and other property, which he needed for the proper management of his business. He therefore prayed that he be at liberty to attend either in open Court or before a referee for the purpose of being examined as

to his sanity of mind and competency of understanding for the management of his person, and that the said commission, inquisition, and all proceedings therein might be superseded, and that the said Samuel Cathcart be required to account for his actings and doings as his committee, and that a referee be appointed to take and state such accounts. The petition was duly verified by the said John H. Cathcart on the 20th day of April, 1876. A copy of said petition was served upon Samuel Cathcart as committee of John H. Cathcart.

On the 24th day of July, 1876, an order was made by the Probate Court, from which it appears that an examination was made and testimony taken, and it was thereupon adjudged "that said John H. Cathcart is of sound mind and memory and capable of managing and controlling himself and his affairs, the said testimony being satisfactory to me."

It was further ordered and adjudged that the commission of lunacy, dated the 25th day of July, 1874, be forthwith superseded and determined.

A further order was made requiring the said Samuel Cathcart, as committee of John H. Cathcart, to turn over to him all of the books and papers in his hands belonging to him.

After the said John H. Cathcart had been adjudged a sane man by the Probate Court in 1876, as above stated, he commenced action in January, 1882, in the Court of Common Pleas for Fairfield County, against Doreth Sugenheimer, who had purchased a lot in the town of Winnsboro, at the sale of the property of John H. Cathcart on the first Monday in January, 1875, made under the decree in the above proceedings. The action was to recover possession of said lot of land, and for damages for the detention thereof. Doreth Sugenheimer, the defendant in action, claimed title under the proceedings of the Court in

said action, and the deed of the sheriff made in accordance with the decretal order therein. The case was brought to trial before Judge Cothran, at the spring term of the Court, 1882, and after hearing the evidence he directed a verdict for the defendant.

Thereafter John H. Cathcart appealed to the Supreme Court, and after hearing the said appeal that Court affirmed the judgment of the Circuit Court. The record in this last-mentioned suit, together with the opinion of the Supreme Court on the appeal therein, was offered in evidence by the respondents in the present motion. See *Cathcart v. Sugenheimer*, 18 S. C. 123, for the opinion of the Supreme Court.

It does not appear that the said John H. Cathcart made any other or further attempts to assail the validity of said judgment under which his property was sold from that time up to the time of his death on the 1st day of January, 1908.

It appeared that in 1883 he was again committed to the State lunatic asylum, where he remained, with the exception of about two weeks, until the time of his death.

After the death of the said John H. Cathcart, who died intestate, his widow, Nancy A. Cathcart, who has since died, together with Thomas M. Cathcart, Mary A. Cathcart, and William M. Cathcart, the movants in this motion, brought actions against all of the original purchasers, or their grantees, immediate or remote, to recover possession of the lands formerly belonging to said John H. Cathcart, and which had been sold on the first Monday in January, 1875, under the decretal order made in suit of Samuel Cathcart, committee of the estate of John H. Cathcart, lunatic, against Hopkins, Dwight & Trowbridge and Samuel B. Clowney, as Clerk of the Court of Common Pleas for Fairfield County, being the identical action in which it is sought by this motion to open said judgment and set aside the sales made thereunder. After the service of the summons and complaint in said actions, notice of this motion was served upon all

of the defendants in said suits or actions, and said suits or actions are still pending in the Court of Common Pleas for Fairfield County.

It is apparent from the foregoing statement of the facts that the real object and purpose of the movants is to assail the titles of the various purchasers, and their subsequent grantees, obtained under the judgment and decree of the Court in the above-mentioned case of *Samuel Cathcart, Committee, v. Hopkins, Dwight & Trowbridge and Others.*

1. If the Court rendering the decree of sale in that case had jurisdiction of the subject-matter and the parties thereto, then, of course, such purchasers, relying upon the validity of the decree in the cause, will be protected.

There can be no question that this judgment shows upon its face that the Court had jurisdiction of the subject-matter, and also of the parties thereto, as the judgment shows upon its face regular service of the summons and complaint in that action upon the defendants thereto.

That judgment appears, therefore, to be a valid judgment, and there does not appear to have been any substantial irregularity in the proceedings had therein, or in the sale made under the decree rendered in said cause. I am of the opinion, therefore, that the purchasers at said sale acquired good and valid titles to the lands respectively purchased by them.

2. One of the real contentions, however, of the movants is that the Probate Court was acting without jurisdiction in appointing Samuel Cathcart as committee of the person and estate of John H. Cathcart, the lunatic. They allege that John H. Cathcart was never served with any notice or process in those proceedings, and therefore that the orders of the Probate Court in the proceedings were made without jurisdiction so to do.

It might be a sufficient answer to this contention to say that this is a collateral attack upon the order and judgments

of the Probate Court and for that reason such contention could not be sustained. However, it is perfectly clear that the Probate Court was vested by the Constitution of 1868 with jurisdiction in such matters. See Constitution of 1868, Art. 4, § 20.

It would seem that, previous to the Constitution of 1868, jurisdiction in such cases was vested in the Courts of Equity, and by Statute of 1808 (5 Stat. 571) concurrent jurisdiction in such matters was conferred upon the Court of Common Pleas. It was accordingly held in *Walker v. Russell,* 10 S. C. 82; that the jurisdiction of Probate Courts "in cases of idiocy and lunacy and persons non compos mentis" was not exclusive, but was concurrent with that of the Court of Common Pleas.

Under the practice prevailing in Courts of Equity in this State, it was held that it was not necessary to give notice of an inquisition in lunacy to the party affected thereby. *Medlock v. Cogburn,* 1 Rich. Eq. 477; *Keys v. Norris,* 6 Rich. Eq. 388.

I do not think, therefore, that the contention of the movants that John H. Cathcart was not served with notice of the inquisition in lunacy has any merit in it.

It is further contended by the movants that John H. Cathcart, the lunatic, was not served with notice of Samuel Cathcart's petition for appointment as his committee. With reference to this contention, it is sufficient to say that the record is entirely silent as to whether such petition was served upon him or not.

It does appear, however, that a copy of the order for examination into the fitness of Samuel Cathcart to be appointed such committee was served upon Mrs. Nancy Cathcart, his wife.

It might therefore be inferred that John H. Cathcart himself was not served with a copy of such order. This is a different matter, however, from the service of the petition for such appointment.

But in addition to all of this John H. Cathcart himself was adjudged to be a sane man upon his own petition, and after due examination and evidence adduced, by an order of the Probate Court, dated July 24, 1876, and the effect of such order was passed upon by the Supreme Court in the case of *Cathcart v. Matthews et al.,* 105 S. C. 329, 89 S. E. 1021.

At page 343 of 105 S. C., at page 1026 of 89 S. E., Mr. Justice Hydrick, speaking for the Court, says:

"Neither Cathcart's confinement in the asylum nor the several adjudications of his lunacy is conclusive of the fact of incapacity. The adjudications are not conclusive even upon him or his privies, because he was not formally a party to either of them. They were ex parte. For the same reason, they are not binding on defendants. They are only prima facie evidence of the fact. *Cathcart v Sugenheimer,* 18 S. C. 123. The adjudication of July, 1876, that he was sane at that time stands on a different footing, and is conclusive against him and his privies, because he was a party to it."

In his petition in that proceeding in which he was declared to be a sane man, John H. Cathcart in said petition, which was verified by himself, states that all of his property, real and personal, was placed in the care and custody of Samuel Cathcart, of the said County and State, who was appointed committee of the estate of your petitioner by an order of W. M. Nelson, Esq., then Probate Judge, bearing date September 2, 1874. He further alleged in his petition "that said Samuel Cathcart still continues as committee and retains possession of books, papers and other property, which your petitioner has need for the proper management of his business," and, among other things, he prayed "that the said Samuel Cathcart be required to account for all his actings and doings as committee of your petitioner."

This was, therefore, an admission that Samuel Cathcart had been appointed his committee and a solemn recognition

of that fact under his own oath at a time when he alleged his reason had been restored and that he was capable of managing his own affairs.

In so far as the rights and titles of the purchasers at the sale under the decree in the case of *Samuel Cathcart, Committee, v. Hopkins, Dwight & Trowbridge* are involved by this motion, it seems to me that by such petition said John H. Cathcart himself affirmed the validity of the proceedings under which the appointment of Samuel Cathcart as his committee was made. The legal effect of filing such petition by him is well stated in the case of *Dutcher v. Hill,* 29 Mo. 271, 77 Am. Dec. 572. That was a case in which the facts were somewhat similiar to those under present consideration. At page 274 of 29 Mo., at page 574 of 77 Am. Dec., it is said:

"The proceedings under the law concerning insane persons are not like a final judgment, which is unalterable after the end of the term in which it was rendered. They are in fieri like a cause pending; and irregularities in them, or defects in the record, may be obviated at any time so long as the lunatic is under the control of the guardian appointed for him. It was competent to the Court to discharge the lunatic at any time from the care and custody of his guardian, so soon as it was informed of the irregularity of the proceeding. If, instead of demanding to have the proceeding set aside by reason of their irregularity, by which the record might have been amended so as to show that there was no cause of complaint, the plaintiff came into Court and asked to be relieved from the custody of the guardian appointed for him, on the ground that he had been restored to his reason, he thereby made a solemn admission of record that the proceedings against him were valid, and he should not now be permitted to say that they were otherwise, and thus take advantage of his neglect to object to the proceedings, when, if the objection has been made, the record might have been amended so as to remove

the ground of his complaint. And this argument answers the objection that the plaintiff had no notice of the proceedings, so that he could not appeal or take a writ of error. For although he did not appear until after the land had been sold, yet, when he did appear, he acknowledged the validity of proceedings under which it was sold; and having obtained the advantage he proposed by this admission, he should not now be permitted to retract it, to the prejudice of an innocent purchaser."

3. In addition to all of this, after the said John H. Cathcart had been adjudged to be a sane man, in January, 1882, he commenced an action in the Court of Common Pleas for Fairfield County against Doreth Sugenheimer, who had purchased certain lots of land at the sale of the real estate of John H. Cathcart on the 4th day of January, 1875, under the decree of the Court in the case of *Samuel Cathcart, Committee, v. Hopkins, Dwight & Trowbridge and Others.* In that action, he sought to recover possession of said lots of land and damages for the detention thereof. He alleged in the complaint that he was seized in fee thereof, and that the defendant was wrongfully in possession.

The defendant in the action, among other defenses, claimed title to said lots under and by virtue of the proceedings in the case of *Samuel Cathcart, Committee, v. Hopkins, Dwight & Trowbridge and Others,* and the decree of sale made thereunder. It was further alleged in the answer that under certain proceedings in the Probate Court, the said John H. Cathcart had been duly adjudged a lunatic, and that Samuel Cathcart had been duly appointed committee of his person and estate.

It was further alleged that he had been adjudged a sane man by the order of the Probate Court made upon his petition on the 24th day of July, 1876, and that he had taken no steps, whatsoever, to vacate or set aside the judgment and sales thereunder in said cause. This case came on for

trial before Judge Cothran at the February, 1882, term of the Court of Common Pleas for Fairfield County. Among other things offered in evidence by the defendants was the record or judgment roll in the case of *Samuel Cathcart, Committee, v. Hopkins, Dwight & Trowbridge, and Samuel B. Clowney, as Clerk of Court,* and being the identical judgment that is now assailed by this motion. After hearing the evidence, Judge Cothran directed a verdict for the defendant. John H. Cathcart, the plaintiff, thereupon appealed to the Supreme Court alleging error, among other things:

(1) For error in admitting said record and judgment roll in evidence, the same being as to him res inter alias acta.

(2) Because his Honor erred when he held that the plaintiff (John H. Cathcart) was not a necessary party to that action brought by his said committee. ·

On hearing said appeal, the Supreme Court affirmed the judgment of the Circuit Court. See 18 S. C. 123. In the opinion of the Supreme Court, the jurisdiction of the Circuit Court, as well as the appointment of Samuel Cathcart, committee, was fully established. The Court held that it was not necessary that John H. Cathcart should have been named as a plaintiff in the suit by his committee for the sale of his property, and further held that the appointment of Cathcart, as committee, to take charge of the person and property of the lunatic, did not have the effect of transferring to the committee the legal title to the property of the lunatic, but that the title still remained in him, and that the relation of his committee to him was analogous to that of guardian and ward. It will thus be seen that the vital questions now being litigated in this motion were put in issue in the case of John H. Cathcart, the ancestor of these movants, against Doreth Sugenheimer, and such questions and issues were decided adversely to him. In my opinion, therefore, these movants are concluded by what was nec-

essarily decided by the Supreme Court in that case, and they cannot again be litigated in this motion. The decision of such issues, which arose in the Sugenheimer case, operated somewhat by way of estoppel. The rule as to this matter is thus stated in 15 R. C. L. tit. Judgments, § 450, where it is said:

"On the other hand, it is equally well stated that a fact which has been directly tried and decided by a Court of competent jurisdiction cannot be contested again between the same parties in the same or any other Court, and that where some controlling fact or question material to the determination of both actions has been determined in a 'former suit, and the same fact of question is again at issue between the same parties, its adjudication in the first will, if properly presented, be conclusive of the same question in the latter suit, without regard to whether the cause of action is the same or not, or whether the second suit involves the same or a different subject-matter, or whether or not is in the same form of proceeding. In such cases, it is also immaterial that the two actions were based on different grounds, or tried on different theories or are instituted for different purposes, and seek different relief. A matter, whether consisting of one or many questions, which has been solemnly adjudicated by a Court of competent jurisdiction, must, in any subsequent litigation between the same parties, where the same question or questions arise, be deemed to have been finally and conclusively settled, except where the litigation is a direct proceeding for the purpose of reversing or setting aside such adjudication. Where parties have once litigated a question in a competent tribunal and been defeated, they cannot thereafter litigate the same question in another tribunal of independent or concurrent jurisdiction, and having no appellate jurisdiction, so long as the original judgment remains unreversed, and in full and operative effect. In harmony with these principles, it has been ruled that if a material fact, decisive of

the case, is tendered as an issue and not withdrawn, a determination thereon adversely to the party tendering it is conclusive against him in a subsequent suit involving the same issue, whether he introduce evidence in the former action in support of such issue or not. A judgment of a Court of competent jurisdiction is conclusive on the parties, not only as to the causes of action therein determined, but also as to the defenses therein pleaded and passed on by the Court."

(4) In addition to what has been said, it appears that the purchasers of real estate of John H. Cathcart at the sale on January 4, 1875, under the decree of the Court in the case of *Samuel Cathcart, Committee, v. Hopkins, Dwight & Trowbridge and Others,* and their immediate or remote grantees, have been in possession of such lands since said sale. If such sales were null and void for any reason, a cause of action to recover their possession accrued to John H. Cathcart himself, unquestionably in July, 1876, at the time he was adjudged a sane man. The statute of limitations certainly began to run at that time in favor of these purchasers, and John H. Cathcart himself at the time of his death would have been barred by the statute of limitations, as well as by the presumption of a grant from himself.

5. At the time John H. Cathcart was adjudged to be a sane man by the order of the Probate Court, he had notice, actual or constructive, of the judgment and decree of the Court under which his property had been sold, but still he did not at any time take any proper steps to vacate said judgment or the sales thereunder. In addition to this, in the case of *Cathcart v. Sugenheimer,* his attention was pointedly directed to this fact, as it is alleged in the eighth defense "that the sale of said premises to this defendant was confirmed on the 5th day of May, A. D. 1875, and the said plaintiff has at no time instituted any proceedings to vacate the order confirming the same, or the

order of sale, or any other of the orders and proceedings had in the case under which the said premises were sold."

It was his duty, in such circumstances, if he felt himself aggrieved by said judgments, to promptly take steps to vacate and set it aside. *Boyd v. Munro,* 32 S. C. 252, 253, 10 S. E. 963; *Robertson v. Blair,* 56 S. C. 96, 34 S. E. 11, 76 Am. St. Rep. 543; *Gales v Poe,* 107 S. C. 484, 93 S. E. 189; *Barfield v. Barnes,* 108 S. C. 1, 93 S. E. 425.

Such inaction and delay upon his part will not commend itself to the favorable consideration of any Court. It tends to show such laches as would bar him of relief, were he now the moving party before the Court. Whatever would bar him from relief would likewise bar these movants who are his heirs at law.

After a careful review and consideration of all the facts and circumstances adduced before me on the hearing of this motion, I am satisfied that no good or useful purpose would be served by vacating the judgment, as prayed for. The titles of these purchasers should be protected. As is well said by the Supreme Court in the case of *Gillam v. Arnold,* 35 S. C. at page 613, 14 S. E. 938, at page 939:

"For many good reasons, all the authorities agree that it is of the greatest importance to sustain judgments rendered in regular form by competent Courts. Any other policy would make the foundation of property insecure, and produce the utmost confusion. The books are full of authorities that a judgment regular in form, and pronounced by a competent Court having jurisdiction, is conclusive—'an absolute verity.' It has been said that the Court should contribute its shares to that stability which results from a respect for things adjudicated."

The judgment and proceedings in the case of *Samuel Cathcart, Committee, v. Hopkins, Dwight & Trowbridge and Others* appear upon their faces to be substantially regular in all respects. The Court clearly had jurisdiction of the subject-matter and of the parties then before it. There

was nothing upon the face of those proceedings or the
judgment itself to give to purchasers any notice, whatso-
ever, of any vital or substantial defects or informalities in
said judgment, or of any irregularities in the appointment
of Samuel Cathcart, as committee, by the Probate Court of
Fairfield County. They purchased, so far as the evidence
before me discloses in good faith, relying upon the validity
of the judgment and decree of the Court, and bona fide
paid the purchase money for the lands respectively pur-
chased by them. They or their subsequent grantees have
been in possession of said lands since the year 1875, and in
my opinion they are entitled to the protection of the Court
and should not, in the circumstances disclosed in this pro-
ceeding, be disturbed in their possession thereof.

It is therefore ordered and adjudged that the motion be
and the same is hereby refused.

*Messrs. G. W. Ragsdale, J. W. Hannahan and T. M.
Cathcart* for appellants. *Mr. Cathcart* cites: *Court was
without jurisdiction to render judgment against John H.
Cathcart; the Committee not having been legally appointed*:
14 Mass. 222; 4 Mason 121; 4 Gray 63; 32 Ark. 627; 64
Ga. 298; 12 Ala. 823; 70 Mass. 63; 15 Ill. 336; 5 Pick. 217;
24 N. E. 662, 30 N. E. 523; 21 R. C. L. 1262. *Order cannot
be made without notice to party to be prejudiced by
it*: 7 S. C. 235. *Procedure to obtain jurisdiction
of lunatic in* 1874: 15 Stat. 497; Code Proc. 1912,
Sec. 185. *Required bond not given*: Rev. Stat. 1872, p.
484, Sec. 1; 3 S. C. 122; Freeman Void Jud. Sales,
Sec. 22; 54 N. W. 335; 55 N. W. 965; 26 Miss.
646; 11 Minn. 347; 44 Miss. 591; 38 Me. 47; 81 Ky. 127;
28 Mich. 251; 30 Mich. 336; 24 Wis. 441; 26 N. Y. 338;
78 N. W. 20; 77 S. W. 1; 81 Ky. 127; 13 S. W
241; 32 S. W. 294; 42 S. W. 401; 68 S. W. 419.
*Without jurisdiction of person no committee could
be appointed for his estate*: 90 Ind. 54; 64 Ind.
194; 92 Am. Dec. 395; 9 Cal. 616; 62 Mo. 585; 27

Cent. Dig. *"Insane Persons,"* Sec. 51; 28 S. E. 922; 19 S. E. 624; 11 S. E. 123; 21 R. C. L. 1262; 19 S. E. 624. *Notice must be addressed to party*: 45 N. W. 1030; 101 N. W. 510; 126 N. W. 909; 40 Pac. 511. *Requirements as to service on lunatics are positive*: 17 S. C. 435; 23 S. C. 154; 23 S. C. 187; 24 S. C. 373; 25 S. C. 275; 31 S. C. 575. *Adjournment of Court unlawful*: Rev. Stat. 1872, 571; 29 S. C. 237; 7 S. C. 373. *Suit by party in representative character*: 8 Rich. L. 345; 108 S. C. 307; 16 S. W. 1035. *Pleadings must allege facts and not conclusions of law*: 35 Hun. 281; 49 N. Y. 259; 41 Barb. 341; 12 How. 321; 115 U. S. 413; 9 Col. 304. *Guardian having adverse interest should not represent infant*: 45 S. C. 323. *Trustee cannot purchase trust property:* 212 Mass. 327; 213 Mass. 545; Pom. Eq. Jur. (2nd Ed.) Sec. 958. *Lapse of time no bar to motion to set aside a void judgment*: 5 S. C. 415; 17 S. C. 446; 48 S. C. 556. *Judgment void on face of record*: 72 S. C. 131; 72 S. C. 576.

*Messrs. McDonald & McDonald and W. D. Douglas,* for respondent, cite: *Remedy is by motion in the cause*: Code Proc. 1912, Sec. 225; 34 S. C. 452; 90 S. C. 558; 56 S. C. 1; 90 S. C. 418; 35 S. C. 613; 52 S. C. 307; 56 S. C. 96. *Purchasers at judicial sales where Court had apparent jurisdiction will be protected*: 21 L. R. A. 1-54 (Note); 99 S. C. 110. *Voidable judgment can only be attacked by a direct proceeding*: 89 S. C. 508; 76 S. C. 484. *Presumption of regularity in judgment*: 106 S. C. 486; 89 S. C. 509; 79 S. C. 306. *John H. Cathcart charged with notice of enrolled judgment after his release from asylum*: 56 S. C. 96; 91 S. C. 464; 105 S. C. 329; 26 S. C. 237; 29 S. C. 84; 32 S. C. 249. *With such notice, his claim is now barred*: 32 S. C. 252; 56 S. C. 96; 107 S. C. 484; 108 S. C. 1; *No defect in judgment and Court cannot disturb it*: 105 S. C. 421; 77 S. C. 91. *Decree adjudged valid*: 18 S. C. 123. *Estoppel*: 77 Am. Rep. 572. *No notice of inquisition in lunacy is necessary*:

1 Rich. Eq. 477; 6 Rich. Eq. 388. *Probate Corut had jurisdiction*: Rev. Stat. 1870, 573. *Judgment voidable, not void*: 12 L. R. A. (N. S.) 895; Buswell Insanity, par. 56, p. 898-9; 43 10. 616; 14 Mass 222; 10 N J. Eq 190; 80 Me. 139; 15 Ill. 386; 129 Mass. 513; 137 Mass. 195; 75 Am. Dec. 213; 47 Am. Dec. 470.

April 11, 1922.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

The particulars of this litigation are set out in the circuit decree, which will be reported.

Except for the suggestion that the case of *Cathcart v. Sugenheimer,* 18 S. C. 123, is res judicata of the validity of the sale proceedings, the conclusions of the Circuit Judge are satisfactory to this Court. Argumentatively we think that the case referred to is conclusive.

It appears that in 1876 John H. Cathcart was judicially declared sane. His cause of action to set aside the various sales then arose, and the statute was not suspended by his subsequent lunacy. *Cathcart v. Matthews,* 105 S. C. 329, at page 346, 89 S. E. 1021. The various grantees having held for nearly 40 years, even if no time runs against a motion to set aside a void judgment, it would be idle to remand the case, even if the judgment were void.

The judgment of this Court is that the decree appealed from be affirmed.