17133

GEORGE S. GOOLSBY, Respondent, v.
NINA S. GOOLSBY, Appellant
(92 S. E. (2d) 57)

*Messrs. Moss & Moss* and *Marshall B. Williams,* of Orangeburg, *for Appellant,*

*Messrs. Kearse & Ness,* of Bamberg, *for Respondent,*

March 15, 1956.

STUKES, Chief Justice.

It appears from the transcript of record herein that appellant and respondent are natives and legal residents of Bamberg County, in this State. Respondent is a Lieutenant Colonel in the United States Air Force, stationed since the year 1953 at Montgomery, Alabama. The parties were married in 1942 and have three children who were born in 1945, 1948 and 1951, respectively. When respondent was stationed in Japan, and appellant with him, they entered into a voluntary, formal separation agreement, which was dated March 13, 1952. It recited differences and amicable settlement whereby they mutually agreed to sever the marriage relation and thereafter live separately, respondent to have custody of the children except during one month in the summer when appellant should have the custody, should she so desire and if the children should be in the United States; respondent would support the children at all times including the period of one month annually when in the custody of appellant. The agreement contained other pertinent provisions which need not be stated. It was recorded in the office of the Clerk of Court of Bamberg County.

The separation agreement was reacknowledged and confirmed by the parties in writing at the foot of it on October 27, 1952; and again by separate instrument executed by appellant on December 1, 1952, after their return to this country. In the last appellant certified that she and respondent had not lived together as man and wife since October 27, 1952; and admitted that she had in the past, quoting, "been guilty of certain indiscretions and of imbibing in alco-

holic beverages excessively." Respondent explained in his testimony on cross-examination by appellant's counsel that the written reaffirmations of the separation agreement were occasioned by the facts that after the execution of it he and appellant lived in the same house (but in separate rooms) in Japan and later returned to the United States on the same ship, but in separate rooms. In addition to these written confirmations of the separation agreement, on June 29, 1953, in order to retain custody of the children for two months instead of one, to which the separation agreement limited her, appellant promised in writing to give the children to respondent on August 1, 1953, or at such time thereafter as he should demand them, quoting from the writing, "in accordance with agreement heretofore signed and hereby ratified * * *." None of these instruments has been denied or attacked by appellant in any manner.

A highly reputable Bamberg attorney, long an acquaintance and friend of the parties, was employed by respondent in 1953 to institute action for divorce and the summons and complaint were served upon appellant in Bamberg County on June 11, 1953. The ground alleged in the complaint for divorce was habitual drunkenness, which was established and decree of absolute divorce was entered on September 29, 1953, and a copy delivered to appellant pursuant to her request and upon her call at counsel's office. It provided that she should have the custody of the children for two months during the summer, instead of one month as provided in the separation agreement, and that they should be supported by the respondent.

Although she defaulted in the divorce action she visited respondent's attorney at his office and requested that the ground of the action be habitual drunkenness and not also adultery; and that she be given custody of the children for two months instead of one month as provided in the separation agreement. Counsel complied with these requests. Appellant attended the reference (of the time and place of which she was advised at her request) and was accompanied by her

sister and also by a brother-in-law; was attentive to the proceedings and made some "side remarks."

Custody of the children was surrendered by respondent to appellant in 1953, pursuant to the agreements, and thereafter returned to respondent; in the summer of 1954 appellant had custody of the children for two months in accord with the decree of divorce, and returned them to respondent. The children were again turned over to appellant in the summer of 1955 but at the end of the two months period, she refused to give up custody and contempt proceedings were instituted against her by respondent in order to regain the custody. When he came into the State to obtain the children he was served with a notice of motion by appellant for an order vacating the judgment of divorce upon the ground that appellant was mentally incompetent at the time of the commencement of the action and remained so until after the rendition of judgment; and no guardian *ad litem* was appointed to represent her in the action.

The motion was made upon the affidavit of her sister with whom appellant resided during that time, that she was extremely nervous, depressed, could not be reasoned with and, in deponent's opinion, was unable to comprehend or transact the ordinary affairs of life. It is noted that this affiant was with her sister (appellant) at the reference in the divorce action and raised no such question. In further support of the motion there was the affidavit of an Orangeburg physician that he treated appellant during the period from February 28 to November 2, 1953, for a nervous condition, during which appellant was in an extremely high state of nervous tension which necessitated her confinement in the Orangeburg Regional Hospital from February 28 to April 4, from April 18 to May 24, and from October 15 to November 2, 1953; and the severity of appellant's condition was such that she could not comprehend or transact the ordinary affairs of life and lacked insight and capacity to make reasonable decisions concerning her welfare and property; that deponent has seen appellant from time to time since November 2, 1953, and

in his opinion she has recovered from her mental illness. A like affidavit by another Orangeburg physician was to the effect that he treated appellant in consultation with her physician, and his conclusions were in agreement with the latter's.

It is noted that none of the intermittent periods of hospitalization coincided with the pendency of the divorce action. It was commenced after the second and concluded by decree before the last. Both respondent and his attorney separately talked with appellant's physician before the action was instituted.

The motion and the contempt proceeding came on to be heard at the same time by the resident judge and at the hearing it was discussed and considered whether he should hear them on affidavits, take testimony of the witnesses or refer the matter to the master, it appearing that counsel for respondent desired to cross-examine the physician-affiants and offer oral testimony of other witnesses. The hearing judge, quoting him, "decided that justice would best be promoted if I (he) referred the question to the master." Thereupon he issued the following order, to which there was no objection and from which there was no appeal:

"The following question arising in this case is referred to Hon. Wm. R. Free, Master for Bamberg County, to take the testimony and to report his findings of fact and conclusions of law, the same to be done with all convenient speed: Was the defendant, Mrs. Nina S. Goolsby, mentally incompetent at the time of the commencement of this action, and did she remain mentally incompetent until after the rendition of the judgment herein?"

At the reference before the master appellant offered in evidence the affidavits attached to the notice of motion to vacate, which are summarized above. Respondent's counsel objected to the admission of the affidavits upon the ground that the order of reference to the master was to take the testimony and that the admission of the affidavits would

afford counsel no opportunity to cross-examine the affiants. The master ruled as follows: "Judge Free: Affidavits accepted subject to objection of Mr. Moss (Ness?). After all it would seem proper that they be able to cross-examine the doctors." The testimony of respondent and his counsel was then taken and they were cross-examined by appellant's counsel. It tended to show the mental competence of the appellant during the period under inquiry, and established other facts which have been stated hereinabove.

The reference was then recessed until afternoon for opportunity of the physicians to appear and testify in reply. One of them was called to the stand by appellant and testified as to his qualifications and was then shown his affidavit, to which latter respondent objected and the witness gave no further testimony. In the course of ensuing colloquy between counsel and the master, the following occurred:

"Judge Free (the master) : Although the defendant was in default in this case, she did appear and so did her sister and I think her brother-in-law. I believe they were all here. I attempted to effect a reconciliation, I heard the case, and as far as I know the defendant was not incompetent. She acted as any other defendant, or plaintiff, would have. I believe, if my memory serves me correctly, I am pretty sure that she did agree, or would have gone back with the plaintiff, but he refused. I just think this should be in the record— I wanted it all clear.

"Mr. Moss: In the light of the statement of Judge Free, we think that he should disqualify himself in making a decision in this matter.

"Judge Free: I made this statement because I thought it should be plain to both sides—

"Mr. Ness: We do not agree that he should disqualify himself—Judge Henderson referred this matter to him.

"Mr. Williams: Well, the whole thing, all the record will go before Judge Henderson for him to pass upon."

The reference was thereupon closed and the master made his report in which he recounted the proceedings and decree in the divorce action, and other facts which have been stated above; held that the affidavits were not competent evidence, but he considered the contents of them and they showed that the first periods of hospitalization of appellant were before the commencement of the divorce action, and the last after it; she was never adjudged incompetent or insane or admitted to the State Hospital or other mental institution; she was present at the reference in the divorce action, accompanied by her sister and her brother-in-law; and her requests of counsel for respondent, to which reference has been made, were mentioned. The master found as a fact that appellant was sane when the divorce action was instituted and has remained sane at all times since; that she abided by the terms of the divorce decree during the period of more than twenty months after its rendition and after her hospitalization, whereby she was estopped to question the validity of it, and was barred by laches, citing 49 C. J. S., Judgments, §§ 284, 288, pp. 512, 529, and *Cathcart v. Hopkins,* 119 S. C. 190, 112 S. E. 64; and he referred to the welfare of the children who should be returned to the custody of respondent and to school at his present station, which would be to their best interests. The well-considered report concluded as follows:

"I held the original reference in this cause of action, which is a matter of record, I having issued the original Master's Report, and the question at hand was referred to me by the Honorable E. H. Henderson with the knowledge of the defendant's attorneys. The reference was set, and no objection was made to my hearing this reference until all of the testimony had been concluded, at which time, after hearing all of the testimony, I announced in open court for the record that at the time of the original reference in the divorce action, the defendant attended said reference together with relatives, and I attempted to effect a reconciliation, and that the defendant appeared to me to be normal at the time. After

making this statement the attorneys for the defendant, for the first time, moved that I disqualify myself in making a decision in this matter. I entered into this case with an open mind, and I feel that I am fully qualified to make a fair decision based upon the testimony presented to me, which I have done. I do not feel that either side is prejudiced, and I further do not feel that it would be fair to all parties concerned for me to disqualify myself after all of the testimony had been heard by me.

"I, therefore, recommend that the motion of the defendant, Nina S. Goolsby, to vacate and set aside the judgment heretofore rendered in the above entitled action, upon the ground that the defendant was mentally incompetent at the time of the commencement of said action and remained mentally incompetent until the rendition of the judgment therein, be denied, the defendant having failed to prove that she was insane or mentally incapacitated during said time."

Appellant took numerous exceptions to the master's report and respondent served notice that he would move for confirmation of the report upon the additional ground that appellant had not been prejudiced and had waived, and was estopped to assert, any right to vacate the former judgment of the court. The exceptions to the report were overruled (save in inconsequential particulars) by order in which it was held that the questioned affidavits were not admissible in evidence in view of the order of reference "to take the testimony," and that there was no other evidence of mental incompetence and facts which we have stated were recounted, which established the mental competence of appellant. The court disregarded the statements of the master relating to the trial of the divorce action before him and further considered the record as if the reference to the master had been to take the testimony only, and the findings of fact and conclusions of law contained in the report were also disregarded. Upon independent examination and consideration of the testimony the court concluded that appellant was not mentally incompetent during the period in question and that the

divorce decree should not be vacated or reopened. It was further found that appellant had waived, was estopped, and was barred by laches to claim, any right to reopen or vacate the judgment and had acquiesced in it and accepted benefits under it.

Concerning appellant's motion before the master that he disqualify himself, the court concluded as follows, as to which no question is made upon this appeal from the order:

"In the tenth, eleventh, and twelfth exceptions it is contended that the Master should have disqualified himself because of certain statements made by him at the reference. The Master, Probate Judge Free, is an officer of the highest integrity, and I am sure that his only purpose was to make it clear that he had not recommended to the court that a divorce be granted against a defendant thought by him to be incompetent. The records of the case show that Mr. Free acted as Master in the divorce case, and that he had tried to effect a reconciliation. This was of course known to the defendant and she made no objection to the appointment of him in the present motion to vacate the judgment. I have not regarded what he said as evidence in the case, and have given to it no consideration or weight as evidence. Besides this, in view of these exceptions, and in order to give to the defendant every possible consideration, I have decided to regard the Master's report as one to take and report the testimony only, and so I have not considered his findings of fact or conclusions of law, although I feel sure that his statement did not indicate any bias or prejudice on his part. At 48 C. J. S., [Judges, § 89, p.] 1076, it is stated that 'the expression of an opinion as to a case before him or some phase of it or some related matter will not disqualify a judge unless he thereby shows bias or prejudice or a prejudgment of the matter in issue.' "

A separate order was concurrently entered whereby appellant was adjudged to be in contempt of the divorce decree, with provision that she might purge herself of the contempt by surrendering custody of the children.

Appellant's several questions have been carefully considered but will not be discussed seriatim. The controlling issue is the contention that the master and court erred in concluding that the affidavits were not admissible in evidence at the reference.

It may be conceded that the court could have heard and decided appellant's motion on affidavits, which, however, in *Team v. Bryant,* 71 S. C. 331, 51 S. E. 148, 149 (a similar case of like result to this), is said to be, quoting from the order on circuit which was published by this court and affirmed on appeal, " ' "a most unsatisfactory mode of eliciting truth" ' ". But the court chose not to do so in this case and referred the issue of fact, which arose out of the motion, to the master to take the testimony. The record shows that the reference to the master resulted, in part at least, from the insistence by respondent's counsel upon the right of cross-examination of the makers of the affidavits which appellant presented to the court. The "Statement" in the transcript includes the following: "'At the hearing on the two motions before the court, the attorneys for the plaintiff objected to the matter being heard on affidavits, whereupon Judge Henderson issued an order dated August 5, 1955, referring the matter * * *." And the following, the facts of which are undisputed and the legal conclusions of which we affirm, is from the order under review:

"It appeared that the plaintiff's counsel wished to cross-examine Dr. Culler (appellant's physician) and to offer the oral testimony of some of his own witnesses, I decided that justice would best be promoted if I referred the question to the master. * * * As clearly indicated by the order of reference, the purpose was to have the Master take the testimony of the witnesses, orally, in the usual manner in which evidence is taken in court, so as to permit their cross-examination."

Cross-examination follows examination in chief by the party who calls the witness. It behooved appellant to produce the affiants as witnesses if she wanted the

benefit of their testimony, and let them be subject to cross-examination. The latter is a most valuable right. "It is the law of evidence that when a witness has been examined in chief, the other party has a right to cross-examine him. * * * The power of cross-examination has been justly said to be one of the principal, as it certainly is one of the most efficacious, tests which the law has devised for the discovery of truth." *State v. McNinch*, 12 S. C. 89.

There was no appeal from the order of reference, as ██ has been said. Therefore, the question here simply is, Were the rules of evidence applicable at the reference? Our statutes and decisions leave no doubt that they were and that the affidavits were not admissible over the objections of respondent.

The applicable provisions of the Code of 1952 follow:

"§ 10-1408. Method of trial.

"The trial by a master or referee shall be conducted in the same manner and on similar notice as a trial by the court.

"§ 10-1409. Procedure upon objection to evidence.

"Masters and referees to whom causes may be referred, whether to hear and decide the whole issues or to report upon any specific question of fact or upon the facts generally, shall hear and decide any objection which may be made to the competency, relevancy or admissibility of any testimony which may be offered. In case upon hearing such testimony the master or referee shall decide the same inadmissible he shall take the same, subject to such objection, but shall not incorporate such testimony so held by him inadmissible with the rest of the testimony in the body of his report but shall append the same separately at the end of his report."

The forerunner of the last copied section, of identical language, was construed in *Devereux v. McCrady*, 49 S. C. 423, 27 S. E. 467, 469, where it was said: "The order must be construed in connection with the law conferring said power upon masters, by which it is seen that, when the accounting is had before the master, he will have the right to decide

any objection to the competency, relevancy, or admissibility of any testimony which may be offered upon such accounting. We do not construe the order as in any manner intending to restrict these powers of the master when the accounting is had before him."

Incidentally, an objection to testimony taken by a referee (master) must be made before him, as it was in this case, it comes too late if first made by exception to his report. *Tompkins v. Tompkins,* 18 S. C. 1; *Cardwell v. Brewer,* 19 S. C. 602, note.

Of special interest here, is the recent case of *Dempsey v. Huskey,* 224 S. C. 536, 80 S. E. (2d) 119, where additional evidence was submitted to the court after the reference was closed and the referee had made his report. It was not considered by the court because there had been no opportunity for cross-examination with respect to the proffered, additional evidence.

Appellant cites *Thompson v. Moore,* 227 S. C. 417, 88 S. E. (2d) 354, in which, however, there was no reference and therefore the case gives no comfort to her contention. It upheld the revocation by the circuit court of an order appointing a guardian *ad litem,* for insufficiency of the evidence of incompetency. *Barr v. One 1935 V-8 Ford Truck,* 188 S. C. 181, 198 S. E. 389, 391, a similar case, was cited with approval; it, also, was heard upon affidavits and not referred. From it we quote the following, which is of significance here: " 'To justify such an appointment, which may have the effect to deprive a person of the control of litigation in which his interests may be largely involved, the fact of incompetency should be specifically alleged, and the court should be satisfied from the proofs that the status of incompetency actually exists at the time the appointment is made. A finding of incompetency should be made.' In other words, we think the court or officer to whom the application is made should require proof, by affidavits *or otherwise,* reasonably sufficient to establish the fact that the subject is an insane

person." (Emphasis added.) And in the *Thompson case* [227 S. C. 417, 88 S. E. (2d) 356] the following was quoted with approval from the *Barr case*: " 'While we do not desire to lay down a hard and fast rule as to the sufficiency of evidence, where there has been no previous adjudication, we do not think it amiss to call attention by way of analogy to Section 6234, Code, 1932 [Section 32-1001, 1952 Code, but see Sec. 32-990 *et seq.* of the 1955 Cumulative Supplement to the Code], relating to the appointment of a committee for an insane person by the probate judge which provides for the *examination of the alleged insane person,* if practicable, and such *other witnesses* as may be deemed necessary at least two of whom shall be practicing physicians.' " (Emphasis again added.)

In view of the conclusion of the lower court that appellant was mentally competent at the commencement and during the pendency of the divorce action, which we affirm, it is not necessary to consider the additional grounds for the denial of appellant's motion, which were waiver, estoppel, laches and the welfare of the children. Therefore, appellant's questions 6, 7, 8 and 9 are dismissed without decision upon the merits of them.

Appellant's question 10, which relates to the contempt order is without merit and is overruled; that order logically followed from denial of the motion to vacate the divorce decree. It merely required compliance with the terms of the decree, which appellant had violated.

The order under appeal is affirmed.

TAYLOR, OXNER and LEGGE, JJ., and BRUCE LITTLE-JOHN, Acting Associate Justice, concur.